IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>CRAIG WILLIAMS,<br><br>　　Defendant. | Case No. 1:17-cr-103<br><br>Judge Susan J. Dlott<br><br>**ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR ORDER REDUCING SENTENCE/MODIFYING JUDGMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |

　　This matter is before the Court on Defendant's Emergency Motion for Order Reducing Sentence/Modifying Judgment to Allow Remainder of Sentence to be Served on Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Docs. 60, 61).[1] The United States responded in opposition to Defendant's motion (Doc. 62), to which Defendant replied (Doc. 63). For the reasons set forth below, Defendant's motion will be **DENIED**.

　　Defendant Craig Williams pled guilty, on February 14, 2018, to one count of distribution and attempted distribution of carfentanil and one count of possession with intent to distribute heroin, both in violation of 21 U.S.C.§ 841(a)(1). (Doc. 29.) From the statement of facts to which Williams admitted, law enforcement officers purchased 28 grams of carfentanil from Williams and recovered "well over" 100 grams of heroin and carfentanil—along with drug processing and packaging materials and at least one firearm—from his residence. (*Id.* at PageID 60.)

---

[1] With the Court's permission, Defendant filed one version of his motion under seal (Doc. 60) and an identical version publicly but with confidential medical information redacted (Doc. 61).

As part of the plea agreement, the parties stipulated that an appropriate sentence included incarceration of at least 60 but no more than 135 months. (*Id.* at PageID 56.) Because Williams' wife was gravely ill with breast cancer and because Williams needed to arrange care for his young children, the Court ordered him released on bond pending sentencing and then allowed him to self-report once sentence had been imposed. (Docs. 38, 52.) He satisfied all bond conditions and self-reported for incarceration as scheduled.

Williams—citing his personal growth while on bond and desire to legitimately support and care for his family—requested incarceration for no more than 60 months. (Doc. 41.) The United States requested a term of imprisonment of 135 months, followed by at least six years of supervised release. (Doc. 49.) On August 6, 2019, the Court sentenced Williams to incarceration for 72 months, followed by eight years of supervised release with a mandatory employment readiness program. (Doc. 52.)

Williams now requests reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), commonly called "compassionate release." According to his motion, his wife succumbed to cancer several months ago, leaving no adult family members. Williams' mother has been caring for his four young children,[2] but she was recently hospitalized with a serious illness. His grandmother, who is in her 70's, then stepped in to care for the children, but she became ill. His mother no longer requires hospitalization, but—according to Williams—her age (early 50's), recent diagnosis, and health history warrant this Court's consideration of his difficult family circumstances.

Pursuant to section 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been imposed except that--

---

[2] One of the four children is in a shared custody arrangement and spends approximately forty percent of her time with Williams' mother. (Doc. 63 at PageID 304.)

2

> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, a defendant seeking a reduction in sentence must both exhaust his administrative remedies and demonstrate "extraordinary and compelling reasons" in support of his early release.

Federal courts disagree on whether the exhaustion requirement can be waived in emergency circumstances. Particularly when evaluating requests related to COVID-19 exposure, some courts conclude that the exhaustion requirement may be waived if "requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate." *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *3 (E.D. Mich. May 5, 2020); *see also United States v. Zukerman*, ___ F.Supp.3d ___, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, ___ F.Supp.3d ___, 2020 WL 1613943 (D. Conn. Apr. 2, 2020). Other courts, however, reach the opposite conclusion. *See, e.g., United States v. Dougherty*, No. 2:18-CR-229-2, 2020 WL 1909964, at *1 (S.D. Ohio Apr. 20, 2020); *United States v. Alam*, ___ F.Supp.3d ___, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) ("[E]ven if an exception to 18 U.S.C. § 3582(c)(1)(A)'s requirements for defendants is appropriate during the COVID-19 pandemic, the

3

Court lacks authority to craft such an exception."); *United States v. Zywotko*, ___ F.Supp.3d ___, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, No. 18-CR-1745-BAS, 2020 WL 1485782 (S.D. Cal. Mar. 27, 2020).

Still, as most courts recognize:

> The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i).

*Zukerman*, 2020 WL 1659880, at *3. In specific cases, however, an inmates' unique situation or health risks may be so severe that requiring administrative exhaustion "would defeat, not further, the policies underlying § 3582(c)." *Id.*

In the case at bar, the Court need not determine whether it has authority to waive the exhaustion requirement. Williams attaches to his motion evidence that he requested compassionate release from prison officials on April 8, 2020, which was denied on April 27, 2020. (Doc. 60-1 at PageID 255.) The United States argues that the Court should not consider the instant motion because Williams' initial request to prison officials did not contain the some of the detailed information currently before the Court. However, the Court recognizes the sometimes rapidly evolving nature of situations that may warrant compassionate release. In addition, a pro se inmate likely will not be able to craft as thorough an application as a talented attorney. Thus, since more than 30 days have elapsed since prison officials received his compassionate release request, the Court concludes that Williams has exhausted his administrative remedies to the minimum level required for this Court to entertain his request on the merits.

Once a defendant has exhausted administrative remedies, a court may grant compassionate release only if "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is consistent with the applicable Sentencing Commission policy statements. 18 U.S.C. § 3582(c)(1)(A)(i). Section 3553(a) factors include, among others: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

In the case at bar, the Court is extremely sympathetic to Williams' mother, grandmother, and children. It is troubling to contemplate the very difficult positions in which these innocents find themselves.

However, even the most generous application of 18 U.S.C. § 3582(c)(1)(A)(i) to the case at bar demands that Williams' motion be denied. First, although Williams reports significant personal growth during his months on bond, this is not his first conviction or even his first drug trafficking conviction. According to his Presentence Investigation Report, his criminal history is a category III, including a prior conviction for trafficking cocaine.

Second, the offense to which Williams pled guilty is extremely serious. Narcotics investigators recovered three drug presses, digital scales, cutting agent, and drug processing and packaging materials, along with nearly two kilograms of heroin and carfentanil. Williams also possessed two loaded and operable firearms, one of which had been reported stolen.

Furthermore, evidence indicates that Williams brought one of his minor children with him to a drug buy.

Third, the Court believes that Williams' efforts at personal growth are sincere, but a review of the record indicates a need to protect the public from future crimes. Williams, by his own admission, has been involved in drug trafficking as a means of financial support since his teenage years. (Doc. 41 at PageID 92.) If released, he will have at least four children[3] to support. Despite laudable intentions, Williams appears to be ill-equipped to avoid a return to criminal activity during times of financial desperation.

Fourth, the Court is mindful of the need to avoid unwarranted sentencing disparities. According to his Presentence Investigation Report, Williams' total offense level (even with a reduction for acceptance of responsibility) would have been 33. Coupled with his criminal history category of III, Williams' Sentencing Guideline imprisonment range would have been 168 to 210 months, absent the stipulated sentence contained in his plea agreement. Even with the stipulations, the United States requested 135 months. Probation recommended 97 months, and the Court sentenced him—with knowledge that his wife was gravely ill and he has several minor children—to 72 months.

Fifth, Williams has served a very small portion of his 72-month sentence. Including time served prior to his release on bond, Williams has served approximately 21 months of his sentence. His projected release date is October 19, 2023. (Doc. 62-2 at PageID 298.) In his reply brief, Williams identifies numerous cases in which compassionate release reduced the original sentence by more than 40 months. (Doc. 63 at PageID 307–08.) However, with three

---

[3] He has three additional children from a prior relationship who do not live with Williams' mother.

exceptions,[4] the inmates in those cases had served at least half of their original sentences. Williams has served only 21 months of his 72-month sentence. Notably, one of the charges to which he pled guilty (Count 2) carries a statutory mandatory minimum of 60 months.

Finally, even if the Court were inclined to grant Williams' motion, he has failed to supply appropriate documentation establishing the medical conditions at issue or the fact that his mother and grandmother are the only people available to care for the children. Other courts have denied similar motions for lack of documented evidence. *See, e.g., United States v. Richardson*, 2020 WL 2200853, at *1 (E.D.N.C. May 6, 2020).

Accordingly, Defendant's Emergency Motion for Order Reducing Sentence/Modifying Judgment to Allow Remainder of Sentence to be Served on Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Susan J. Dlott
United States District Court

---

[4] In *United States v. Delgado*, ___ F.Supp.3d ___, 2020 WL 2464685 (D. Conn. April 30, 2020), the Court granted compassionate release due to unique health concerns in a facility suffering a significant COVID-19 outbreak, reducing his sentence from 120 months to time served (29 months) plus supervised release with home confinement. Williams cites two other cases in which he claims that a 60-month sentence was reduced to 11 months' time served and a 120-month sentence was reduced to 36 months' time served, but they are not available on Westlaw and he failed to attach them.