IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:17-cr-103 |
| | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER DENYING DEFENDANT'S** |
| CRAIG WILLIAMS, | : | **MOTION TO RECONSIDER** |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant's Motion for Reconsideration (Docs. 65, 66).[1] Defendant Craig Williams asks this Court to reconsider its prior Order (Doc. 64) Denying Emergency Motion to Reduce Sentence/Modify Judgment to Allow Remainder of Sentence to be Served on Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons set forth below, Defendant's Motion for Reconsideration will be **DENIED**.

As the Court explained previously, Defendant Craig Williams pled guilty, on February 14, 2018, to one count of distribution and attempted distribution of carfentanil and one count of possession with intent to distribute heroin, both in violation of 21 U.S.C.§ 841(a)(1). (Doc. 29.) From the statement of facts to which Williams admitted, law enforcement officers purchased 28 grams of carfentanil from Williams and recovered "well over" 100 grams of heroin and carfentanil—along with drug processing and packaging materials and at least one firearm—from his residence. (*Id.* at PageID 60.)

As part of the plea agreement, the parties stipulated that an appropriate sentence included incarceration of at least 60 but no more than 135 months. (*Id.* at PageID 56.) Because Williams'

---

[1] With the Court's permission, Defendant filed one version of his motion under seal (Doc. 66) and an identical version publicly but with confidential medical information redacted (Doc. 65).

wife was gravely ill with breast cancer and because Williams needed to arrange care for his young children, the Court ordered him released on bond pending sentencing and then allowed him to self-report once sentence had been imposed. (Docs. 38, 52.) He satisfied all bond conditions and self-reported for incarceration as scheduled.

Williams—citing his personal growth while on bond and desire to legitimately support and care for his family—requested incarceration for no more than 60 months. (Doc. 41.) The United States requested a term of imprisonment of 135 months, followed by at least six years of supervised release. (Doc. 49.) On August 6, 2019, the Court sentenced Williams to incarceration for 72 months, followed by eight years of supervised release with a mandatory employment readiness program. (Doc. 52.)

On May 28, 2020, Williams moved for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), commonly called "compassionate release." His wife succumbed to cancer on November 27, 2019, leaving no adult family members. (Boyd Aff. Dated June 24, 2020, Doc. 66-1 at PageID 328.) Williams' mother has been caring for his four young children,[2] but she was recently hospitalized with a serious illness. His grandmother, who is in her 70's, stepped in to care for the children, but she became ill. His mother no longer requires hospitalization, but she suffers from chronic health issues and certain every day activities remain difficult for her.

Pursuant to section 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been
> imposed except that--
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons,
> or upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the Bureau

---

[2] Two of the children are Williams' biological children, and two of them are Williams' deceased wife's children from prior relationships. (Doc. 66-1 at PageID 328.) Two of the four children are in unofficial shared custody arrangements. One child is primarily in Williams' mother's care, and the other spends approximately forty percent of her time in Williams' mother's care. (Doc. 63 at PageID 304.)

> of Prisons to bring a motion on the defendant's behalf or the lapse of
> 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction . .
> . and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

Thus, a defendant seeking a reduction in sentence must both exhaust his administrative remedies

and demonstrate "extraordinary and compelling reasons" in support of his early release.

Federal courts disagree on whether the exhaustion requirement can be waived in

emergency circumstances. The United States Court of Appeals for the Sixth Circuit recently

clarified that the compassionate release exhaustion requirement is not jurisdictional but

constitutes a mandatory claim-processing rule. *United States v. Alam*, ___ F.3d ___, 2020 WL

2845694 (6th Cir. June 2, 2020). Thus, any compassionate release motion filed less than 30 days

after the warden receives the compassionate release request must be denied without prejudice.

*Id.* at ___, 2020 WL 2845694 at *5.

In the case at bar, Williams offered evidence that prison officials received his

compassionate release request on April 8, 2020. (Doc. 60-1 at PageID 255.) He filed his

original compassionate release motion on May 28, 2020, more than 30 days later. Therefore, the

Court can properly address the merits of his motion.

As the Court previously explained, a court may grant compassionate release only if "after

considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds

that "extraordinary and compelling reasons warrant such a reduction" and the reduction is

consistent with the applicable Sentencing Commission policy statements. 18 U.S.C. §

3

3582(c)(1)(A)(i). Section 3553(a) factors include, among others: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

In its prior Order Denying Defendant's Motion to Reduce Sentence (Doc. 64), the Court specifically identified six reasons Williams' compassionate release request must be denied:

1) Williams has a significant criminal history including a prior conviction for trafficking cocaine.

2) Williams engaged in extremely serious criminal conduct. Using multiple locations for his operation, he possessed nearly two kilograms of heroin and carfentanil as well as more than one loaded, operable firearm. Perhaps most importantly for this motion, Williams brought one of his minor children with him to a drug deal.

3) By his own admission, Williams has been involved in drug trafficking as a means of financial support since his teenage years. (Doc. 41 at PageID 92.) If released, he will have at least four children[3] to support. Despite laudable intentions, Williams appears ill-equipped to avoid a return to criminal activity during times of financial distress.

4) The sentence imposed was extremely lenient compared to similarly serious crimes. Williams' Sentencing Guideline imprisonment range would have been 168 to 210 months, absent the stipulated sentence in his plea agreement. Even

---

[3] He has three additional children from a prior relationship who do not live with Williams' mother.

with the stipulation, the United States requested 135 months. Probation recommended 97 months. The Court sentenced him—with knowledge that his wife was gravely ill and he has several minor children—to 72 months.

5) Williams has served only 21 months of his 72-month sentence. One of the charges to which he pled guilty carries a statutory mandatory minimum of 60 months imprisonment.

6) Williams did not submit documentation establishing his mother's medical condition or the fact that his mother and grandmother are the only people available to care for the children.

In the Motion for Reconsideration currently before the Court, Williams addresses only the sixth reason given for denying his original motion, and he attaches documentation establishing the facts alleged as to his mother and grandmother. He makes no mention of the first five reasons the Court provided in denying his motion.

The Court remains extremely sympathetic to Williams' mother, grandmother, and children. They are, undoubtedly, in very difficult positions. Unfortunately, this result is not "extraordinary" or even uncommon. Incarcerated people commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct.

Williams engaged in very serious criminal conduct, endangering many lives in the process. According to the United States, Williams possessed enough carfentanil to kill more than half the population of Cincinnati. (Doc. 62 at PageID 291.) Nonetheless, with knowledge of his difficult family situation, the Court imposed a relatively lenient sentence of 72 months imprisonment. He has served very little of even that lenient sentence. Mindful of the need to avoid further unwarranted sentence disparities among defendants with similar records who have

5

been found guilty of similar conduct, the Court declines Williams' invitation to reconsider its earlier denial of his compassionate release request.

Accordingly, Defendant's Motion for Reconsideration (Docs. 65, 66) is hereby **DENIED**.

**IT IS SO ORDERED.**

Susan J. Wlott

Judge Susan J. Dlott
United States District Court